ANNIE FINDLEY V. A. E. HOLLEY ET AL.

Decided January 14, 1905.

**1.—Liquor Dealer—Sale to Minor—Charge—"Knowingly."**

Where, in an action against a liquor dealer for selling liquor to a minor, and for permitting the minor to enter and remain in the saloon, it was admitted that, if the person in charge of the saloon sold liquor to the minor, he must have known that he was a minor, it was error, as tending to confuse and mislead the jury, for the court's charge, in submitting the question of whether defendants or their agents sold liquor to the minor, to be qualified by the expression, "knowing that he (the minor) was in defendant's saloon and received such liquor."

**2.—Same.**

For the same reason it was error for the charge, in submitting the issue of whether defendants permitted the minor to remain in the saloon, to require that they should have knowingly permitted him to so remain.

**3.—Same—Definition of "Remain."**

A definition of the word "remain" in the following terms, "In this connection you are instructed that the term 'remain' is not to be given its restricted sense, but means rather something that exists and continues, after some other time, or event, or to tarry or loiter," is held to have had a tendency to confuse the mind of the jury.

Error from the District Court of Wichita. Tried below before Hon. A. H. Garrigan.

*Montgomery & Hughes, Miller & Scurry* and *A. H. Britain,* for plaintiff in error.

*J. H. Barwise, Jr.,* and *L. H. Mathis,* for defendant in error.

STEPHENS, Associate Justice.—This suit was brought by the mother of Bernard Findley, a minor, against A. E. Holly & Co., retail liquor dealers at Wichita Falls, and the sureties on their bond, to recover $1,000 for two breaches of said liquor dealer's bond, alleging that Holly & Co., on or about March 13, 1902, sold and permitted to be sold, and gave and permitted to be given, to said minor, in their house and place of business at Wichita Falls, Texas, spirituous, vinous and malt liquors; and further alleging that Holly & Co., at the same time and place, permitted said minor to enter and remain in their said house and place of business, where they were engaged in the sale of such liquors. Among other defenses, the defendants pleaded that if said minor obtained any liquor in the saloon of Holly & Co. it was obtained without the knowledge or consent of Holly & Co., or their agents, and denied that they had knowingly permitted said minor to enter and remain in said saloon. The issues were submitted to the jury, and judgment was rendered in favor of defendants on the following verdict, the jury finding in reply to questions propounded at the instance of plaintiff:

"1. That the defendants or their agents did not sell any intoxicating liquors to Bernard Findley.

"2. That they did not give any intoxicating liquors to said minor.

"3. That they did not permit any person to give said minor any intoxicating liquors.

"4. That, at the time and place referred to in plaintiff's petition, some person other than the bartender of A. E. Holly & Co. did, in said Holly & Co.'s place of business, give beer to said minor, Bernard Findley.

"5. That the beer so given to said minor was procured from the bartender of Holly & Co.

"6. That said minor did drink said beer in the place of business of Holly & Co.

"7. That, on the night referred to in plaintiff's petition, the minor, Bernard Findley, did enter the place of business of A. E. Holly & Co.

"8. That the said minor did not loiter or tarry in said place of business after procuring, or before procuring, intoxicating liquors.

"9. That the said minor did not loiter or tarry in said place of business."

And in reply to questions propounded at the instance of defendants:

"1. That neither the defendants or their agent or employe sold or gave, or permitted to be sold or given, any spirituous, vinous or malt liquors to Bernard Findley, knowing that he was in the defendants' saloon and received such liquor.

"2. That the minor, Bernard Findley, was not knowingly permitted to remain in defendants' saloon.

"3. That, as soon as the crowd in the saloon on that night had thinned out, and the rush was over, the employes of defendants for the first time knew or noticed the presence of said minor in said saloon, and that he was then ordered out.

"4. That the reason why his presence was not discovered sooner was on account of the rush and crowd in the saloon.

"5. That it might be possible that an ordinarily prudent person, under like circumstances, would have noticed the presence of Bernard Findley, the minor, in said saloon earlier.

"6. That the bartender or agent of the defendants did not permit Bernard Findley to enter and remain in the defendants' place of business."

The plaintiff insists, strange to say, that this verdict entitled her to a judgment, although it contains an explicit finding against her on every material issue made by the pleadings. The first, second and third issues submitted at the request of plaintiff, and the last issue submitted at the request of defendants, covered all the essential issues, and the remaining eleven findings were, to say the least, superfluous.

The contention that the verdict did not warrant a judgment in favor of defendants seems more plausible, but, since we have come to the conclusion that the verdict itself must be set aside, that becomes immaterial.

We think the court erred in submitting the special issues and instructions requested by defendants. They raised false issues and tended to confuse and mislead the jury. The first instruction should not have been given with the qualification "knowing that he was in the defendants' saloon and received such liquor." It was admitted by the person in charge of the saloon that, if he sold Bernard Findley liquor, he must have known he was a minor. If, then, he sold or gave him liquor at all, the proprietors of the saloon became liable for a breach of the bond; and so, also, if the minor was permitted to enter and remain in the saloon, the word "knowingly," used in the second special instruction, introduced an inadmissible qualification of the word "permit" used in the statute. (Maier v. State, 2 Texas Civ. App., 296, 21 S. W. Rep., 974; Red River, T. & S. Ry. Co. v. Dooley, 80 S. W. Rep., 566.) The meaning of the word "permit" is sufficiently treated in the cases cited, and need not be further discussed. The question was not one of diligence, as indicated by the third, fourth and fifth special findings. True, the evidence tended to prove that a train-load of thirsty excursionists had just come over from Seymour to Wichita Falls to hear ex-Governor

Taylor, of Tennessee, lecture, and rushed into the saloon in question in such numbers and with such violence as to render it quite difficult for the bartender to wait on the customers and observe the presence of minors at the same time. Indeed, he seems to have had his hands full in this instance, and was perhaps entitled to sympathy, but unless the violent rush of the thirsty mob complained of amounted to vis major, the terms of the bond remained obligatory.

But if these objections be met with the reply that the charges criticised merely submitted immaterial and harmless issues, we think the same can not be said of the following special charge given at the request of defendants: "Did, or did not, Dick Holly permit Bernard Findley to remain in the defendants' place of business on the night of March 13, 1902? In this connection you are instructed that the term 'remain' is not to be given its restricted sense, but means rather something that exists and continues after some other time or event, or to tarry or loiter." It is by no means clear what was in the mind of the author of this definition of a plain English word, or what meaning the definition conveyed to the minds of the jury. It had a tendency to confuse, and, since we do not find it easy to account for the verdict otherwise, we conclude that this, or some of the other charges given at the request of defendants, must have misled the jury.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and Remanded.*